Chancellor James
delivered the decree of the court.
The complainants in this case pray for a specific execu- . , , . tion of a contract made with defendant for the sale of one third part of Broughton Island, of which they state defends ant to have been in possession, ever since a short time after the date of the said contract, to wit, on the 21st Dec. 1803. The defendant insists that the said contract should now be rescinded, becap.se the complainants prevented him from complying with the same, by not delivering to him J. Fabian’s bonds, as he alleges they were bound to do by the contract, previous to his taking any steps to comply with the1 contract.
The court then took a full view of the contract, and of the conduct of the parties under it, and declared its opinion to be, that the complainants were bound to have delivered the bonds of Fabian to the defendant, when he made the payments which he actually did; and that certain ill consequences having resulted to the defendant, from the complainants not having delivered these bonds, the court would not have decreed a specific performance of the contract, if the matter had rested there. But (the court said) the decree for specific performance does not now depend upon the mutual stipulations of the contract, for it appears that the defendant took possession of the land with complainants permission, shortly after the date of the agreement. That he has remained in possession ever since, *591 and has also paid tbe interest which he was bound to pay by the terms of said agreement. Therefore he has in part executed th’e contract, and by his own act, has waived the mutual stipulation, and it is too late for him now-to x * . . say to complainant, you have not performed the condition precedent, and therefore are not entitled to a specific performance.* But as the complainants by their own act in pressing for the payment of the bonds of Fabian, and threatening suit, when in equity they ought to have tendered the same to defendant, have thereby indirectly compelled the the administrator of, Fabian to eject the defendant from the other two thirds of the Island, and rendered it impossible for him now to mortgage the same; therefore the court will Only direct him to give four bonds for the purchase money of the remaining third, and that he do mortgage the said third. But as defendant has paid to complainant all the interest due on Fabian’s bonds to the 1st March, 1805, and one 3'rears interest in advance on the purchase money, that he be allowed the amount of the money so paid on Fabian’s bonds, with interest thereon from the time he paid it, as a part of his purchase money; and that the same-be deducted from the first bond, which he is hereby decreed to give to complainants trustee. But as it appears by a letter of Mr. Harford, as early as the 20th of August, 1805 — “ that Dr. Ramsay had written two letters to Mr. Elliott, urging him to make speedy arrangements to take up his bondsand the first letter from the trustee, Paul Hamilton, threatening to sue, is not until the 3d September, 1805, it appears to the court that the conduct of Dr. Ramsay, in particular, has not been equitable.
1st. In not offering to deliver the bonds of Fabian, thereby to ascertain if defendant could comply with his part of the contract; and in constituting himself the judge of his ability to comply with the same.
2d. In making use of those bonds knqwingly, (for by *592 the letter of Brailsford, above cited, he ought to have known it) as the indirect means of evicting defendant from !;^e other two thirds of the island, and thereby lessening the value of the remaining third.
Under all these circumstances, it appears to the court that defendant is entitled to some favor.
It is therefore decreed, that the complainants do make to the defendant good and sufficient titles for the said third of Broughton Island, and that the defendant do give bonds and a mortgage of the premises. The bonds to be made in the following manner, viz. the first bond for the balance of the first instalment, if any, as above directed! payable on the 1st March, 1809, when the last instalment, was to have been paid ; and the three remaining bonds, payable in the three following years, viz. 1810, 1811, and 1812.
Moreover, as the use of said lands, enjoyed by the defendant, ought to be adequate to the interest of the purchase money, let the said four bonds draw interest from the time that defendant took possession of the lands, with permission of complainants. Also, let it be referred tc the master to ascertain the time of defendants taking possession, to liquidate the several sums, and to take bonds and mortgage on the principles above established-*

 See the case of Fludyer v. Cocker, 12 Vesey, 25, 6; and Powell vs. Martin. 8 Vesey, 146.

 There is a slight notice on some of the papers of a re-hear-iiig, or hill of review. But I have no notes of it, and there does hoi seem to have been any alteration of the decree.